

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
11/20/2015

| | | |
|---|---|---|
| IN RE: | § | |
| JOSEPH ANDREW SMITH | § | CASE NO: 14-70501 |
| Debtor | § | |
| | § | CHAPTER 7 |
| | § | |
| | § | JUDGE RODRIGUEZ |
| LACK'S VALLEY STORES, LTD. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 15-7005 |
| | § | |
| JOSEPH ANDREW SMITH | § | |
| Defendant | | |

**MEMORANDUM OPINION**
**DENYING PLAINTIFF'S MOTION TO DISMISS**

[*Resolving 15-7005 - ECF No. 34; 14-70501 ECF No. 58*]

### I. Introduction

Before this Court is Plaintiff's Motion to Dismiss, which asks this Court to dismiss the causes of action alleged in its Complaint, presented in conjunction with a Stipulation of Dismissal and effectively in exchange for a reaffirmation agreement from the Defendant. [Case No. 15-07005, ECF No. 34]. The Plaintiff seeks to dismiss all of its alleged causes of action. *Id.* at 3 ¶ 1.8. This Court determines that based on the pleadings within the Motion to Dismiss, [ECF No. 34], all other evidence in the record, and relevant statutory and case law, that the Plaintiff's Motion to Dismiss is not grantable, as it constitutes an underlying settlement, *sub rosa*, that does not meet the standards for being fair, equitable, and beneficial to the estate. Therefore, this de facto compromise between Plaintiff and Defendant is hereby DENIED.

## II.  Findings Of Fact

To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

1.      Lacks Valley Stores, Ltd., (herein "*Plaintiff*"), alleges that it obtained two judgments against the Defendant in the amounts of $8,472.48[1] and $2,954.80[2] plus costs and interest On August 13, 2013.

2.      On September 10, 2014, Joseph Andrew Smith, (herein "*Defendant*") filed a petition under chapter 7, title 11 of the United States Bankruptcy Code (the "*Bankruptcy Code*" or "*Code*"),[3] thereby initiating Case Number 14-70501.  [ECF No. 1].

3.      On October 14, 2014, Defendant filed his chapter 7 Individual Debtor's Statement of Intention, wherein he checked the box designated as "Surrendered" to Plaintiff.  [ECF No. 14].

4.      Defendant listed on Schedule D two claims owed to the Plaintiff.

   a.   Plaintiff's  judgment lien 4/5/2012 for office furniture, Avant's Smith, Inc. in the amount of $3,234.00;

   b.   Plaintiff's judgment lien 3/4/2012 for office furniture, Avant's Smith, Inc. in the amount of $8,752.00.  No such items of such value were listed in either Schedules B or C.

5.      The last day to oppose discharge or dischargeability was December 30, 2014.

---

[1]  Plaintiff filed Proof of Claim #1 in the amount of $8,752.48.
[2]  Plaintiff filed Proof of Claim # 2 in the amount of $3,234.80.
[3] Any reference to "**Code**" or "**Bankruptcy Code**" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

[ECF No. 11].

6.      On November 17, 2014, the First Meeting of Creditors commenced and was continued to November 21, 2014.

7.      On December 2, 2014, the First Meeting of Creditors commenced and was continued to December 19, 2014.

8.      On December 19, 2014, Plaintiff filed its Motion To Compel Defendant to appear for Rule 2004 Examination & Sanctions.  [ECF No. 21].

9.      On December 19, 2014, Plaintiff filed its Motion To Extend The Time To Object to Debtor's Discharge to February 2015.  [ECF No. 24].

10.     On December 22, 2014, Defendant filed his response to Plaintiff's Motion, [ECF No. 24], and essentially argued that Plaintiff did not provide adequate notice of the Rule 2004 Examination and that he was opposed to the Plaintiff's Motion.  [ECF No. 28].

11.     On December 22, 2014, Plaintiff filed its Reply to Defendant's Response, alleging that Defendant failed to appear at a 2004 Examination and that it needed more time to examine the Debtor, his wife, and his cousin before the adversary could be filed.  [ECF No. 30].

12.     On December 23, 2014, this Court conducted a hearing on Plaintiff's Motion, granted Plaintiff until January 31, 2015 to file its complaint, and ordered the Defendant's deposition to be taken by the first week of January 2015.  [ECF No. 33].

13.     On January 8, 2015, the First Meeting of Creditors commenced and was continued to January 30, 2015.

14.     On January 30, 2015, Plaintiff filed the above referenced adversary complaint. [Case No. 14-70501; ECF No. 37], initiating adversary proceeding 15-07005.

15.     Plaintiff's first cause of action alleges that the Defendant should not be granted a

discharge, pursuant to 11 U.S.C. § 727 (a)(2), (3) & (7).[4]  [Case No. 15-07005; ECF No. 1].

16.     Plaintiff, in its complaint, alleges that Defendant has admitted to committing acts specified under 11 U.S.C. §727(a).  [ECF No. 1 at 6-7].

17.     Plaintiff's second cause of action alleges that the debts owed to Plaintiff are excepted from discharge pursuant to 11 U.S.C. § 523(a), paragraph (6), which provides that "a discharge under section 727… does not discharge an individual debtor from any debt" "for willful and malicious injury by the debtor to another entity or to the property of another entity." [ECF No. 1 at 7-9].

18.     Plaintiff, in its complaint, alleges that Defendant violated § 523(a)(6) by knowingly selling the merchandise to which Plaintiff had a purchase money security interest. [ECF No. 1 at 7-9].

19.     Plaintiff's third cause of action alleges that Debtor's debt is nondischargeable under either § 523 or § 727 by virtue of Debtor committing an offense under Texas Penal Code § 32.33,  [ECF No. 1], which provisions that a "person who has signed a security agreement creating a security interest in property… commits an offense if, with intent to hinder enforcement of that interest… he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property," the intent of which is presumed when any part of the

---

[4] 1.     Section 727(a)(2)-(3) & (7) provide:
(a) the court shall not grant a debtor a discharge, unless
      (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
            (A) property of the debtor, within one year before the date of filing of the petition; or;
            (B) property of the estate, after the date of the filing of the petition;
      (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case;
      (7) the debtor has committed any act specified under paragraph (2),(3), (4), (5) or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

underlying debt is due, the person fails to make payment, and the person fails to deliver possession of the secured property when lawful demand is made. Texas Penal Code § 32.33 also provisions an offense where the person sells or otherwise disposes of secured property with intent to appropriate the proceeds, the intent of which is presumed where the person does not deliver the proceeds to the secured party within 11 days after the secured party lawfully demands the proceeds.  [ECF No. 1 at 9-11].

20.    Plaintiff alleges that by virtue of Debtor's violation of Texas Penal Code § 32.33, in selling the secured property after a lawful demand and failing to deliver the proceeds to Plaintiff, Debtor's conduct has met the intentionality requirements of either § 523(a)(6) or § 727(a).  [ECF No. 1 at 9-11].

21.    On February 9, 2015, the chapter 7 trustee filed his Report of No Distribution in the main bankruptcy case.

22.    On August 14, 2015, Plaintiff filed a Motion for Approval of Compromise And Settlement Agreement (hereinafter "***Settlement Agreement***") in the main bankruptcy case.  [Case No. 14-70501; ECF No. 41].  The proposed Settlement Agreement called for a judgment in favor of the Plaintiff: (i) under account number xxx735 in the amount of $6,379.00 and a declaration that such debt was not dischargeable under 11 U.S.C. §523(a)(6); (ii) under account number xxx525 in the amount of $1,630.00 and a declaration that such debt was not dischargeable under 11 U.S.C. §523(a)(6) and that the Defendant is to enter into a Reaffirmation Agreement to repay said debts. There was no mention in the Settlement Agreement as to what was to occur with the Texas Penal Code and § 727 causes of action.

23.    On August 17, 2015, Plaintiff filed its Motion For Approval of Reaffirmation Agreements in the main bankruptcy case.  [ECF Nos. 42 and 43].

24.     On September 18, 2015, this Court conducted an evidentiary hearing on Plaintiff's Settlement Agreement and denied the requested relief. While speaking on the record, however, Plaintiff's counsel made it clear that all causes of action, including the §727 causes of action, would be dismissed in exchange for judgment and reaffirmation of the debt.

25.     On October 14, 2015, Plaintiff filed its Motion To Dismiss in both the main bankruptcy case and adversary proceeding.  [Case No. 14-70501; ECF No. 58]; [Case No. 15-07005; ECF No. 34].  In its Motion to Dismiss, Plaintiff now requests that all causes of action against Defendant be dismissed. Attached to its Motion to Dismiss is Exhibit "A" Stipulation of Dismissal, which states that "nothing has been promised to or by the Plaintiff in consideration of the withdrawal of the objection aside from the obligation in the Reaffirmation Agreements." [Case No. 15-07005; ECF No. 34-1].

### III.  Legal Standard

A bankruptcy court is permitted to dismiss an adversary proceeding for any of the reasons enumerated in Fed. R. Civ. P. 41, which is incorporated into adversary proceedings by Fed. R. Bankr. P. 7041.  Rule 7041 provides that

> Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

Fed. R. Bankr. P. 7041.  The Committee Notes for Rule 7041 highlight the importance of why dismissing a complaint objecting to the debtor's discharge carries such a high bar, because

> Dismissal of a complaint objecting to a discharge raises special concerns because the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor or someone acting in his interest. Some courts by local rule or order have required the debtor and his attorney or the plaintiff to file an affidavit that nothing has been promised to the plaintiff in consideration of the withdrawal of the objection. By specifically authorizing the court to impose conditions in the

order of dismissal this rule permits the continuation of this salutary practice.

Fed. R. Bankr. P. 7041 advisory committee's note.  Rule 41 also contemplates that dismissal of a cause of action can be conditioned by the court when the plaintiff seeks dismissal of a cause of action other than an objection to discharge, which must first meet the special notice considerations contemplated by Rule 7041.  *Compare* Fed. R. Bankr. P. 7041 *with* Fed. R. Civ. P. 41(a)(2) (stating that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, *on terms that the court considers proper…*") (emphasis added).  Rule 9019's notice provisions are instructive, given the Advisory Committee's concerns regarding an underlying settlement that may prompt a plaintiff to dismiss a cause of action in an adversary proceeding.  Rule 9019 has two provisions pertaining to potential compromises, which state that:

> (a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

> (b) Authority To Compromise or Settle Controversies Within Classes. After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

Fed. R. Bankr. P. 9019(a)-(b).  In addition to the provisions of Rule 9019, the Fifth Circuit has provided guidance on what qualifies as "fair, equitable, and in the best interest of the estate."  *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980); *In re Roqumore*, 393 B.R. 474, 479-80 (Bankr. S.D. Tex. 2008); *see also Official Comm. Of Unsecured Creditors v. Cajun Elec. Power. Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997).  The Fifth Circuit in *In re Cajun Elec. Power Coop.* stated that bankruptcy judges must consider the following factors when evaluating a settlement:

(1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,

(2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and

(3) All other factors bearing on the wisdom of the compromise.

119 F.3d at 356; *see also In re Jackson Brewing Co.*, 624 F.2d at 602.   Furthermore, the Fifth Circuit has expanded upon the third factor by adding that courts must consider "[w]hether the compromise serves the paramount interest of creditors with proper deference to their reasonable views" and "[t]he extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion." *In re Roqumore*, 393 B.R. at 480 (citing to *In re Cajun Elec. Power Coop.*, 119 F.3d at 356, and *In re Foster Mortgage Corp.*, 63 F.3d 914, 917 (5th Cir. 1995)).   A court may exercise discretion to determine whether the proposed compromise or settlement warrants approval. *Lindauer v. Traxler (In re Traxler)*, 277 B.R. 699, 702 (Bankr. E.D. Tex. 2002) (citing *In re Jackson Brewing Co.*, 624 F.2d at 602-03). The decision to approve a compromise "lies within the discretion of the trial judge." *In re AWECO, Inc.,* 725 F.2d 293, 297 (5th Cir. 1984). The Court need not "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *Cajun Elec.,* 119 F.3d at 355.

Given the Advisory Committee's concerns regarding compromises and settlements waiving objections to the discharge of debts that spur a plaintiff to move to dismiss its claims, this Court will give special consideration to the mischief inherent in such arrangements while considering the Fifth Circuit's factors for approving settlements. *Compare* Fed. R. Bankr. P. 9019 advisory committee note *with In re Cajun Elec. Power Coop.*, 119 F.3d at 356, *and In re Roqumore*, 393 B.R. at 480.   Accordingly, this Court will evaluate the Plaintiff's Motion to

Dismiss pursuant to the Fifth Circuit factors for approving settlements, due to the stipulation attached to the motion that references a reaffirmation agreement between the Plaintiff and Defendant. *In re Cajun Elec. Power Coop.*, 119 F.3d at 356; *In re Roquimore*, 393 B.R. at 480; Finding of Fact No. 25.

## IV.  Conclusions Of Law

### A.  Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." 11 U.S.C. § 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. The Southern District of Texas's standing "Order of Reference to Bankruptcy Judges," provides for the automatic referral of bankruptcy cases to bankruptcy courts. *In re: Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012). This is a core matter for the purpose of § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core. Section 157 enumerates a non-exclusive list of core matters, which includes "matters concerning the administration of the estate." 11 U.S.C. § 157. The decision to grant or deny a party's request to dismiss a cause of action in an adversary, which itself arises as an objection to discharge, is squarely a core matter under the Code. Therefore, jurisdiction is proper under the statutory provisions governing bankruptcy courts.

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 is governed by 28 U.S.C. § 1408, which designates that venue may hold wherever "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity…" In his bankruptcy petition, Defendant

alleges that he resides in McAllen, Texas. Therefore, venue is proper.

## B. Constitutional Authority To Enter A Final Order

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *Stern v. Marshall*, the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts. *Id.* The Supreme Court held that § 157 violated Article III to the extent that it authorized bankruptcy judges to issue final judgments on certain matters. *Id.* at 2616. The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate. *Id.* at 2618. The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute held by Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19. Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional authority. *Id.* at 2620. This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* 28 U.S.C. § 157. However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments. *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The matter at bar requires this Court decide whether to grant Plaintiff's Motion to Dismiss a set of claims as to the dischargeability of Defendant's debt, [ECF No. 34], which solely concerns federal bankruptcy law.  Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the matter at bar.

## C.  Motion to Dismiss Predicated Upon Settlement or Compromise

In the matter at bar, Plaintiff's Motion to Dismiss purports, by name, to solely deal with the § 727 claims, but the actual prayer for relief requests that the "Court allow the dismissal of *all claims* against the Defendant Debtor, Joseph Andrew Smith." [Case 15-07005, ECF No. 34 ¶ 1.8] (emphasis added).  For the purpose of this Court's analysis, all of the claims brought by Plaintiff are objections to Defendant's overall discharge and the exception of discharge of particular debts. Therefore, the appropriate approach is to look beyond the bare Motion to Dismiss to its exhibited Stipulation, [ECF No. 34-1], to determine if the dismissal should be granted or denied.  *Compare* Fed. R. Bankr. P. 9019 advisory committee note *with In re Cajun Elec. Power Coop.*, 119 F.3d at 356, *and In re Roquemore*, 393 B.R. at 480.  Thus, this Court will analyze the Stipulation and underlying Reaffirmation Agreements to determine if the compromise is "truly the product of arms-length bargaining and not of fraud or collusion" or coercion as required by the Fifth Circuit's third factor in approving compromises.  *Foster Mortgage*, 68 F.3d at 918; *In re Roquemore*, 393 B.R. at 480.

The first Fifth Circuit factor in analyzing whether a compromise is fair, equitable, and in the best interests of the estate requires that this Court first look to the Plaintiff's "probability of success in the litigation, with due consideration for the uncertainty in fact and law."  *In re Cajun Elec.*, 119 F.3d at 356.  Here, the adversary proceeding has not advanced significantly. However, looking at the bare allegations contained in the complaint, Plaintiff is questionably positioned to

succeed on its claims, because it fails to establish Defendant's requisite intent. [ECF No. 1 at 6-9]. The Fifth Circuit has stated that a § 523(a)(6) claim must show that the "willful and malicious injury by the debtor … to the property of another entity" must be "without just cause or excuse." *Garner v. Lehrer (In re Garner)*, 56 F.3d 677, 681 (5th Cir. 1995). The Supreme Court further refined that explanation in *Kawaauhau v. Geiger*, where the Court stated that in order for an injury to be willful, it must be "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 523 U.S. 57, 61 (1998). The Court went on to hold that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. Therefore, the § 523(a)(6) claim is unlikely to succeed based on the paltry facts alleged in the complaint.

Compromises of §727 claims are viewed with heightened scrutiny. Section "727(a) is directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engaged in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on ... a single creditor." *In re Chalasani,* 92 F.3d 1300, 1311 (2d Cir. 1996). Accordingly, some courts have held that §727 claims may never be compromised. *In re Vickers,* 176 B.R. 287, 290 (Bankr. N.D. Ga. 1994) ("It is against public policy to sell discharges ... Selling discharges would be a disease that would attack the heart of the bankruptcy process, its integrity."); *In re Moore,* 50 B.R. 661, 664 (Bankr. E.D. Tenn. 1985) ("A discharge in bankruptcy depends on the debtor's conduct; it is not an object of bargain."). At the very least, courts view compromises of §727 claims with heightened scrutiny. *In re Traxler,* 277 B.R. at 705 ("the policy should be to view §727 settlements with heightened skepticism and to subject them to close scrutiny by the bankruptcy court").

In the instant case, the Plaintiff's § 727(a)(3) claim is even more dubious than its § 523

claim and, again, Plaintiff's bare allegations do not indicate that Defendant's behavior is such that the failure to maintain "adequate records" is such that it is "impossible to ascertain his or her financial condition or material business transactions." *Tow v. Henley (In re Henley)*, 480 B.R. 708, 781 (Bankr. S.D. Tex. 2012); *see also Robertson v. Dennis (In re Dennis)*, 330 F.3d 969, 703 (5th Cir. 2003). While Defendant has allegedly admitted to having not maintained adequate records regarding the transfer of the property, his frankness as to the transaction certainly makes the determination of the transaction ascertainable. [Case No. 15-07005; ECF No. 1 at 2-6]. The facts provided by Plaintiff in its complaint also make a successful claim under § 727(a)(2) unlikely, as there is no evidence, as pled, of requisite intent by the Defendant. [ECF No. 1 at 2-6]. The facts, as pled, further fail to establish a likelihood of success on a claim under § 727(a)(7)'s catchall provision, for debtor malfeasance under § 727(a)(4), (a)(5), or (a)(6). Therefore, as this Court is unconvinced of Plaintiff's likelihood of success on the merits of its claims on this sparse record, it cannot read the compromise towards a finding that it is "fair, equitable, and in the best interest of the estate" based on the first *Cajun Elec.* factor. *In re Roqumore*, 393 B.R. at 480. At this juncture, only a trial will show which party may prevail on the merits.

Plaintiff also adds a claim sounding in the Texas Penal Code, which essentially requires consideration of the same facts as the § 727(a)(2) claim, as its third allegation. The Fifth Circuit has twice plainly stated that the resolution of a matter before a bankruptcy court has no bearing on a criminal matter because they are "fundamentally different proceedings, both in purpose and procedure, and the causes of action resolved by each are totally different." *United States v. Pepper*, 51 F.3d 469, 473 (5th Cir. 1995) (holding that it does not believe that "a bankruptcy discharge has any effect on the district court's power to order restitution in a criminal case"); *see*

*also United States v. West*, 22 F.3d 586, 590 n.10 (5th Cir. 1994); *United States v. Tatum*, 943 F.2d 370 (4th Cir. 1991) (holding that "[w]hile a discharge in bankruptcy cannot be entered when based on fraud, a discharge order does not resolve the issue of whether fraud occurred"). Accordingly, because the Texas Penal Code claim provides for an presumption of intent and the facts will otherwise be the same, an analysis of criminal fraud under the Texas Penal Code claim will be unnecessarily duplicative of the § 727(a)(2) claim, because the § 727(a)(2) claim more rigorously requires that actual intent be proven. Therefore, since this is a nondischargeability adversary proceeding that requires actual intent, it will be more judicially efficient to analyze the Texas Penal Code claim under § 727(a)(2)'s actual intent standards. Having concluded that Plaintiff's § 727 claims fail under the first *Cajun Elec.* factor, this Court so concludes with respect to the Texas Penal Code factor.

The second factor from *Cajun Elec.* requires that this Court weigh the potential "complexity and likely duration of the litigation and any attendant expense [and] inconvenience." *Cajun Elec.*, 119 F.3d at 356.  The complexity of the litigation seems rather minimal, given the relatively straightforward facts, as pled by Plaintiff, and Defendant's candor. [ECF No. 1 at 2-6].  The litigation would consequently not be expected to last for a lengthy period of time, given the low complexity of the case and given the parties' previously demonstrated willingness to compromise. A compromise would therefore not be expected to save the estate from great expense and inconvenience. For the foregoing reasons, this Court finds that the second *Cajun Elec.* factor's considerations militate against a finding that the compromise is "fair, equitable, and in the best interest of the estate." *In re Roqumore*, 393 B.R. at 480.

The third *Cajun Elec.* factor evaluates the "wisdom of the compromise," which is broken into two more specific factors– that is "[w]hether the compromise serves the paramount interest

of creditors with proper deference to their reasonable reviews" and "[t]he extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion." *In re Roqumore*, 393 B.R. at 480.  The first of the two considerations weighs very much against approval of the compromise, as the settlement serves merely Plaintiff's interest and no other creditors are a party. *Id.* Furthermore, the second factor similarly weighs against a finding in favor of the compromise. The Plaintiff, by virtue of the compromise, seeks to hold the Defendant liable for a debt for property that is no longer in the Defendant's possession and appears, based on the facts pled, beyond the reach of the Defendant.  [ECF No. 1 at 4-5].  This Court cannot help but find that the reaffirmation agreements propounded by the parties is tantamount to the Plaintiff holding the Defendant's discharge as a Lucian hostage[5] for pre-petition debt. In consideration of the "wisdom of the compromise," this Court finds that the compromise solely serves the interest of a single creditor, and, from all appearances, is a *quid pro quo* exchange of continued debt for a discharge with no proposed benefit to the estate. These considerations weigh against finding that the compromise is "fair, equitable, and in the best interest of the estate" based on the third *Cajun Elec.* factor, as modified by the Fifth Circuit. *In re Roqumore*, 393 B.R. at 480.

In total, the Plaintiff's Motion to Dismiss appears to be a vessel crafted in an attempt at carrying the reaffirmation agreement, as evidenced by the Stipulation filed with this Court, and which is to be met with a critical eye according to Rule 7041. The underlying compromise, as discussed previously, lacks any semblance of being "fair, equitable, and in the best interest of the estate." *Cajun Elec.*, 119 F.3d at 356.  Therefore, this Court **DENIES** Plaintiff's Motion to

---

[5] William Shakespeare, *et al*, *The Works of William Shakespeare:  Troilus and Cressida. Coriolanus. Titus Andronicus. Romeo and Juliet* 345 (1895) ("And if he stand on hostage for his safety, Bid him demand what pledge will please him best.").

Dismiss.

## V. Conclusion

Plaintiff moved for this Court to dismiss "all claims against the Defendant" in its Motion to Dismiss.  [ECF No. 34 ¶ 1.8].  The Motion to Dismiss was offered in conjunction with a Stipulation of Dismissal, which stated that "the Defendant has provided an affidavit that nothing has been promised to or by Plaintiff in consideration of the withdrawal of the objection aside from the *obligation in the Reaffirmation Agreements*."  [ECF No. 34-1 at 1] (emphasis added). Rule 7041 requires that this Court review Plaintiff's Motion to Dismiss and, as needed, discretionarily condition the order as it deems proper or deny the motion.  Fed. R. Bankr. P. 7041.  This Court reviewed the Motion and conjoined Stipulation using the Fifth Circuit's factors for analyzing a compromise announced in *In re Cajun Elec. Power Co.*  119 F.3d at 356.  The *Cajun Elec.* test required that this Court find that the compromise be "fair, equitable, and in the best interest of the creditors."  *Id.*  A review of the factors determined that the compromise is not fair, not equitable, and is in the interest of a sole creditor rather than all the creditors. Accordingly, as the Plaintiff has failed to satisfy the burden required by *Cajun Elec.*, this Court orders that the Motion to Dismiss be **DENIED**.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 11/19/2015.

Eduardo V. Rodriguez
United States Bankruptcy Judge